UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JIANZHUANG YU et al., | CASE NO. 2:26-cv-01372-DGE |
| Petitioners, | ORDER ON PETITION FOR WRIT OF HABEAS CORPUS (DKT. NO. 1) |
| v. | |
| JULIO HERNANDEZ et al., | |
| Respondents. | |

Petitioners Jianzhuang Yu, Anibal Garcia Ramirez, Marvin Hitler Zamora, and Alfredo Arroyo Gomez filed a petition for a writ of habeas corpus under 28 U.S.C. § 2241, challenging their re-detention by U.S. Immigration and Customs Enforcement ("ICE") at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington. (Dkt. No. 1.) For the reasons discussed herein, the petition is GRANTED.

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS (DKT. NO. 1) - 1

# I.    BACKGROUND

Petitioners filed a petition for a writ of habeas corpus on April 22, 2026.  (Dkt. No. 1.) Pursuant to the Court's standard scheduling order, Respondents filed a response on May 7, 2026. (Dkt. No. 9.)  On May 11, 2026, Petitioners filed a traverse.  (Dkt. No. 15.)

There are certain facts common to all four of the Petitioners in this case.  Petitioners are all noncitizens who were detained after entering the United States without admission and then released into the community, either on an Order of Release on Recognizance ("OREC") or on humanitarian parole, subject to certain conditions. While released, they resided in the United States, integrated into their communities, pursued education and employment, applied for asylum, and, with limited exceptions, accrued no criminal convictions.  Each was later re-detained by immigration officials without pre-deprivation notice or an opportunity to be heard.

Petitioners assert Respondents violated their rights under the due process clause of the Fifth Amendment by re-detaining them without pre-deprivation notice and a hearing.  (Dkt. No. 1 at 27–28.)  Petitioners also request leave to file a motion for attorney fees and costs pursuant to the Equal Access to Justice Act ("EAJA").  (*Id.* at 28.)  Respondents argue Petitioners are applicants for admission subject to mandatory detention under 8 U.S.C. § 1225(b).  (Dkt. No. 9.)

# II.    LEGAL STANDARDS

## A.  Habeas Petitions

A writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. CONST., Art. I, § 9, cl. 2).  To succeed on his habeas petition, Petitioner "must show [he] is in custody in violation of the Constitution or laws or treaties of the United States." *Doe v. Bostock*, No. C24-0326-JLR-SKV, 2024 WL 3291033, at *5 (W.D. Wash. Mar. 29, 2024), *report and recommendation adopted*, No.

C24-0326JLR-SKV, 2024 WL 2861675 (W.D. Wash. June 6, 2024) (citing 28 U.S.C. § 2241). Because habeas proceedings are civil in nature, the "[p]etitioner 'bears the burden of proving that he is being held contrary to law, . . . [and] he must satisfy his burden of proof by a preponderance of the evidence.'" *Aditya W. H. v. Trump*, No. 25-cv-1976, 2025 WL 1420131, at *7 (D. Minn. May 14, 2025) (quoting *Freeman v. Pullen*, 658 F. Supp. 3d 53, 58 (D. Conn. 2023) (citations omitted)).

**B. Mandatory Detention Scheme**

Section 1225 applies to "applicants for admission" to the United States, who are defined as a noncitizen "present in the United States who has not been admitted or who arrives in the United States . . . ." 8 U.S.C. § 1225(a)(1). Applicants for admission fall into two categories, both of which are subject to mandatory detention.[1] *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018). Individuals detained under § 1225 can only be paroled into the United States "for urgent humanitarian reasons or significant public benefit." *Id.* at 300 (quoting 8 U.S.C. § 1182(d)(5)(A)).[2]

The implementing regulations include another requirement for parole: the noncitizen must "present neither a security risk nor a risk of absconding." 8 C.F.R. § 212.5(b). In other words, if a noncitizen has been granted parole, it means that a DHS official with authority decided that there were either "urgent humanitarian reasons" or "significant public benefit"

---

[1] § 1225(b)(1) applies to individuals initially determined to be inadmissible due to fraud, misrepresentation, or a lack of valid documentation. § 1225(b)(2) "serves as a catchall provision that applies to all applicants for admission not covered by" § 1225(b)(1). *Jennings*, 583 U.S. at 287.

[2] In contrast, 8 U.S.C. § 1226(a) is broader than its counterpart and is the "default rule" for noncitizens present in the United States who are arrested and placed in immigration detention. *Jennings*, 583 U.S. at 303. § 1226(a) permits the government to release a detainee on bond during the pendency of the detainee's removal proceedings. *Id.*

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS (DKT. NO. 1) - 3

justifying the parole of that individual, and that the individual did not pose a security or flight risk.  To revoke parole, in turn, (1) "the purpose for which parole was authorized" must have been accomplished or a DHS official with authority must decide that "neither humanitarian reasons nor public benefit warrants the continued presence of the alien in the United States"; and (2) written notice must be provided to the noncitizen.  8 C.F.R. § 212.5(e)(2)(i) (upon accomplishment of the purpose for which parole was authorized or in the opinion of one of the officials that neither humanitarian reasons nor public benefits warrants continued presence, "parole shall be terminated upon written notice to" the noncitizen); *see also* 8 U.S.C. § 1182(d)(5)(A) ("[W]hen the purposes of such parole shall, in the opinion of the Secretary of Homeland Security, have been served the alien shall forthwith return or be returned to the custody from which he was paroled[.]").

Following termination of parole, "any order of exclusion, deportation, or removal previously entered shall be executed." 8 C.F.R. § 212.5(e)(2)(i); *see also* 8 C.F.R. § 212.5(e)(1). "If the exclusion, deportation, or removal order cannot be executed within a reasonable time, the [noncitizen] shall again be released on parole unless in the opinion of [an authorized DHS official] the public interest requires that the [noncitizen] be continued in custody." 8 C.F.R. § 212.5(e)(2)(i).

"Where the nominal parole period has lapsed but DHS leaves the noncitizen at liberty and continues to process applications or authorize employment, courts have inferred that parole was effectively continued beyond the stated expiration date . . . [i]n that circumstance, any later termination must comply with the written-notice procedures of 8 C.F.R. § 212.5(e)(2)(i)." *Popova v. Blanche et al*, Case No. C26-1229-MLP, 2026 WL 1242984 (W.D. Wash. May 6, 2026) (collecting cases).

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS (DKT. NO. 1) - 4

**C. Procedural Due Process**

The Due Process Clause protects against deprivation of liberty without proper process, and this protection extends to deportation proceedings. U.S. Const. amend. V. ("No person shall be . . . deprived of life, liberty, or property, without due process of law[.]"); *Trump v. J.G.G.*, 604 U.S. 670, 673 (2025) (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993) ("'It is well established that the Fifth Amendment entitles aliens to due process of law' in the context of removal proceedings.").

The traditional test for evaluating due process claims set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976), "can and must account for the heightened governmental interest in the immigration detention context." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206 (9th Cir. 2022). "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews*, 424 U.S. at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). *Mathews* employs a three-factor test looking at (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest." *Mathews*, 424 U.S. at 335.

## III.    DISCUSSION

**A. The Petitioners**

1.  Jianzhuang Yu

Petitioner Jianzhuang Yu is a citizen of China. (Dkt. Nos. 2 at 2; 14-1 at 3.) Yu claims the Chinese government imprisoned and beat him after he refused to surrender his family's land. (*Id.*) On August 5, 2021, Yu, his wife and his son entered the United States via Mexico seeking

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS (DKT. NO. 1) - 5

asylum. (*Id.*) Yu and his family were apprehended at the border near San Ysidro, California and detained by immigration authorities. (*Id.*) On October 13, 2021, Yu was issued an OREC. (Dkt. No. 16-1 at 2.) The OREC identifies Petitioner was released "[i]n accordance with section 236 of the [Immigration and Nationality Act ("INA")] and the applicable provisions of Title 8 of the Code of Federal Regulations[.]"[3] (*Id.*) DHS also issued and served Yu with a Notice to Appear ("NTA"). (Dkt. No. 14-2.)

Respondents assert Yu was placed on Alternatives to Detention ("ATD"), which included GPS monitoring, and was paroled into the United States. [4] (Dkt. No. 10 at 2.) Yu asserts he complied with his release conditions and obligations with the immigration court to the best of his ability. (Dkt. No. 2 at 3.) ICE eventually removed Yu's ankle monitor and granted him permission to move to Portland, Oregon. (*Id.* at 2.)

After entering the United States, Yu began to establish himself in Portland. Yu began working at a local restaurant, and his wife gave birth to a daughter in February 2022. (*Id.* at 4.) Yu has no criminal record in the United States or in China. (Dkt. Nos. 2 at 4; 14-1 at 7.) On March 25, 2025, Yu's asylum application was denied during a hearing at the Portland Immigration Court. (*Id.*) Yu's appeal of the denial is pending before the Board of Immigration Appeals ("BIA"). (*Id.*) On November 15, 2025, Yu was re-detained by ICE and taken into custody. (Dkt. No. 14-1 at 6.) The same day, Enforcement and Removal Operations ("ERO") cancelled Yu's OREC and terminated his participation in the ATD program. (Dkt. No. 10 at 2.)

---

[3] Section 236 of the INA is codified at 8 U.S.C. § 1226.

[4] Respondents contend Yu's parole expired on August 4, 2022. (Dkt. No. 10 at 2.) The parties dispute whether Yu was subject to his OREC or on parole when he was re-detained. Respondents contend Yu was released on temporary parole. (Dkt. No. 9 at 3 n. 2.) Yu contends that following the expiration of his parole, he was subject to the conditions of his October 13, 2021 OREC. (Dkt. No. 15 at 5.)

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS (DKT. NO. 1) - 6

On December 23, 2025, the Tacoma Immigration Court denied Yu's bond request concluding it lacked jurisdiction to set a bond.  (*Id.* at 3.)

        2.  <u>Anibal Garcia Ramirez</u>

Petitioner Anibal Garcia Ramirez is a citizen of Guatemala.  (Dkt. Nos. 3 at 2; 14-3 at 2.) Garcia Ramirez asserts he left Guatemala at the age of 14 due to economic hardship and discrimination based on his darker skin complexion.  (Dkt. No. 3 at 2.)  On July 24, 2017, Garcia Ramirez entered the United States via Mexico and was detained by Customs and Border Patrol in the Rio Grande Valley.  (Dkt. Nos. 3 at 2; 14-3 at 3–4.)  On August 4, 2017, Garcia Ramirez was released to his father and moved with him to Spokane, Washington.  (Dkt. No. 3 at 2.)  DHS issued and served Garcia Ramirez with forms I-200 ("Warrant for Arrest of Alien" issued pursuant to INA §§ 237 and 287),[5] I-862 (NTA),[6] and I-286 ("Notice of Custody Determination" issued pursuant to INA § 236).[7]  (Dkt. No. 14-3 at 4.)

Following his release, Garcia Ramirez attended high school, began working as a cook to support his family, and planned to return to school to study gastronomy.  (Dkt. No. 3 at 6.) While in Spokane, Garcia Ramirez claims he "always tr[ied] [his] best" to comply with the requirements of his release and "[a]side from a traffic ticket" he only got in trouble with the police once, when he was cited for having "some kind of cigarette" in a backpack.  (*Id*. at 2–5.)

On October 10, 2018, DHS personally served Garcia Ramirez with a new NTA charging him as removable pursuant to INA § 212(a)(6)(A)(i)/8 U.S.C. § 1182(a)(6)(A)(i).  (Dkt. Nos. 11

---

[5] An example of Form I-200 is found at Dkt. No 14-8.

[6] An example of Form I-862 is found at Dkt. Nos. 14-2, 14-5.

[7] The Court takes judicial notice that Respondents' Form I-286 is a "Notice of Custody Determination" issued pursuant to INA § 236.  *See LNU v. Bondi et al.*, Case No. 2:26-cv-00187-DGE, Dkt. No. 7-5; *Singh v. Noem et al*, Case No. 2:26-cv-00079-DGE, Dkt. No. 9-3.

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS (DKT. NO. 1) - 7

at 2; 14-3 at 8.)  On August 8, 2025, Garcia Ramirez filed an application for asylum.  (Dkt. No. 3 at 4.)

On January 20, 2026, Garcia Ramirez was taken into custody "because he missed biometric check-ins on 16 different dates between November 28, 2024 and September 17, 2025." (Dkt. Nos. 11 at 2; 14-3 at 7.)  After he was re-detained, he was transported to NWIPC.  (Dkt. No. 3 at 5.)  On March 16, 2026, Garcia Ramirez had a bond hearing at the Tacoma Immigration Court, at which the immigration judge denied his bond request.  (Dkt. Nos. 3 at 5; 11 at 2.)  On April 14, 2026, the immigration judge denied his bond redetermination request.  (*Id.*)  Garcia Ramirez's appeal of his bond denial is currently pending before the BIA.  (*Id.*)

### 3.  Marvin Hitler Zamora

Petitioner Marvin Hitler Zamora is a citizen of Nicaragua.  (Dkt. Nos. 4 at 2; 14-4 at 5.) Hitler Zamora asserts he fled Nicaragua due to persecution based on his political opinions and sexual orientation.  (Dkt. No. 4 at 2.)  On March 24, 2024, Hitler Zamora entered the United States without inspection and was released on parole with ATD two days later.  (*Id.*)  Hitler Zamora asserts he attended every scheduled home and in-person visit and complied with the requirements of his release, but reports having issues with the check-in app, which often malfunctioned.  (*Id.* at 2–5.)  In December 2024, Hitler Zamora filed an application for asylum. (*Id.*)  He later applied for and received a work permit, which is valid until 2030.  (*Id.* at 3.)  He has no criminal history in the United States.  (*Id.* at 7.)  Prior to being detained, Hitler Zamora was working in a pizzeria and taking English classes at Miami Dade College.  (*Id.*)  Hitler Zamora resided in Miami with his partner, a United States citizen who works as a chef.  (*Id.*)

In or around June 2025, United States Citizenship & Immigration Services informed Hitler Zamora that his asylum case was dismissed because he required a credible fear interview.

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS (DKT. NO. 1) - 8

(*Id.* at 4.)  On November 3, 2025, Hitler Zamora was detained during what he thought was a routine check-in.  (*Id.* at 5.)  Hitler Zamora was told he was being detained for immigration violations, and was handed a document informing him that he had missed several check-ins which he believes he did not miss.  (*Id.* at 6.)  After he was detained, Hitler Zamora was moved between detention centers in Florida, Texas, and Arizona, until he eventually arrived at NWIPC, where he has been held since December 2025.  (*Id.* at 6–7.)  Hitler Zamora alleges his detention was deeply traumatic. He asserts that while being held at the Florida detention center known as "Alligator Alcatraz" he was bullied by guards and other detainees due to his sexual orientation and was sexually harassed by a guard by being forced to change clothes in front of him.  (*Id.* at 6.)  On December 18, 2025, after arriving in Tacoma, DHS issued Hitler Zamora an NTA directing him to appear before an immigration judge on January 16, 2026.  (Dkt. No. 14-5 at 2.)

On February 4, 2026, Hitler Zamora filed a bond re-determination request with the Tacoma Immigration Court.  (Dkt. No. 12 at 2.)  On February 10, 2026, the immigration judge denied his request.  (*Id.*)  On February 2, 2026, DHS filed with the Tacoma Immigration Court a Motion to Pretermit Hitler Zamora's asylum application under the Asylum Cooperative Agreements between the United States and Ecuador and Honduras.  (*Id.*)  On March 11, 2026, an immigration judge held a hearing on DHS's motion.  (*Id.*)   The immigration judge granted DHS's motion and ordered Hitler Zamora removed to Ecuador or in the alternative Honduras. (*Id.*)  On April 10, 2026, Hitler Zamora filed a notice of appeal with the BIA, and his appeal is currently pending.  (*Id.*)

4.  Alfredo Arroyo Gomez

Petitioner Alfredo Arroyo Gomez is a citizen of Mexico.  (Dkt. Nos. 5 at 2; 14-6 at 2.) Arroyo Gomez was tortured and shot by local cartels for being an employee of a political party.

(Dkt. No. 5 at 2.)  He left Mexico after the cartels attempted to kill him.  (*Id.*)  On or about May 8, 2015, Arroyo Gomez entered the United States with his wife and daughter near San Ysidro, California.  (*Id.*)  Arroyo Gomez applied for asylum, was issued an NTA and attended all required office check-ins and immigration hearings.  (*Id.*)  Although his asylum application was denied in 2019, he filed an appeal with the BIA.  (*Id.*)

Between 2015 and 2020, Arroyo Gomez resided in Phoenix, Arizona.  (*Id.*)  In 2020, Arroyo Gomez and his wife divorced, after which he and his daughter moved to Washington State.  (*Id.* at 3.)  Arroyo Gomez informed ICE of his intention to file for divorce and provided the agency with his new address in Washington; he was not given any additional check-in requirements.  (*Id.*)  In 2022, the BIA terminated his removal proceedings.  (*Id.*)  Arroyo Gomez last encountered ICE in 2023, when he went to the Tukwila ICE Office to renew his Employment Authorization Document.  (*Id.*)  Arroyo Gomez resides in Burien, Washington with a childhood friend from Mexico.  (*Id.*)  He worships at his local Catholic church and is employed as a pressure washer by a company in SeaTac.  (*Id.*)  He has no criminal history in either Mexico or the United States.  (*Id.* at 5.)

On March 16, 2026, Respondents detained Arroyo Gomez as he was returning home.  (*Id.*)  Respondents acknowledge that when Arroyo Gomez was detained, "he was not the target . . . but was driving the vehicle registered to the target and believed to be the target."  (Dkt. No. 9 at 6.)  Even after determining he was not the person Respondents were looking for, Respondents detained him anyway.  (*Id.*)[8]  DHS later issued a warrant for Arroyo Gomez's arrest

---

[8] The Parties provide significantly different versions of the interactions between Respondents' agents and Arroyo Gomez on the day Arroyo Gomez was detained.  (*Compare* Dkt. No. 3–5 *with* Dkt. No. 14-6 at 3–4.)

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS (DKT. NO. 1) - 10

and served him with an NTA informing him he was subject to removal based on INA § 212(a)(7)(i)(I).  (Dkt. Nos. 14-7 at 2, 5; 14-8 at 2.)

### B.  *Matthews* Analysis

1.  Private Interest

The first *Mathews* factor considers "the private interest that will be affected by the official action."  *Id.*  Federal courts have continually recognized an immigration detainee's private interest in freedom from imprisonment.  *See Hamdi*, 542 U.S. at 529 (finding freedom from detention "the most elemental" of private interests); *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) ("Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects."); *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025).  An individual who was initially released from immigration custody is deprived of this private interest in freedom from imprisonment upon a renewed detention.  *See Makuey v. Scott*, Case No. 2:25-cv-02135-DGE-BAT, 2025 WL 3640900, at *4 (W.D. Wash. Dec. 16, 2025) (finding Petitioner "has now been undeniably deprived of [his interest in liberty] because he was arrested, transferred to the NWIPC, and remains detained today" following an earlier release).

Respondents argue Petitioners Arroyo Gomez and Yu are detained pursuant to 8 U.S.C. § 1225(b)(1) because "they arrived at a port of entry, were inadmissible, and paroled into the United States for removal proceedings."  (Dkt. No. 9 at 9.)  Respondents also contend Petitioners Gabriel Ramirez, Hitler Zamora, and *Arroyo Gomez* are detained pursuant to 8 U.S.C. § 1225(b)(2).  (*Id.*)  Respondents acknowledge Petitioners have a protected liberty interest in remaining out of custody, but argue for various reasons that their detention is justified.

a. *Jianzhuang Yu*

Respondents assert that Petitioner Yu's temporary parole expired in 2022 and argue he should "not have the expectation of indefinite liberty in the United States." (Dkt. No. 9 at 10.) Yu notes Respondents' evidence concerning the terms of his release is unreliable. Yu points to his October 2021 OREC and contrasts this with Respondents' assertion that the 2025 revocation of his OREC was in error because "[Yu] was not released on OREC but rather temporary parole." (Dkt. No. 9 at 3 n. 2.)

Although DHS's notes from Yu's detention on August 6, 2021 indicate Yu was paroled into the United States, absent from the record is any order confirming Yu's release on parole. Instead, the record establishes Customs and Border Patrol released Yu on an OREC "[i]n accordance with section 236 of the [Immigration and Nationality Act ("INA")] and the applicable provisions of Title 8 of the Code of Federal Regulations[.]" (Dkt. No. 16-1 at 2.) An OREC is issued when a detainee is released pursuant to § 1226. *See Ortega-Cervantes v. Gonzales*, 501 F.3d 1111, 1115 (9th Cir. 2007) ("It is apparent that the INS used the phrase 'release on recognizance' as another name for 'conditional parole' under § 1226(a).").

Respondents also acknowledge they revoked Yu's OREC on November 15, 2025. (Dkt. No. 10 at 2). As this Court has previously noted, "[i]t would make little sense for Respondents to revoke Petitioner's release on [an] order of recognizance issued pursuant to § 1226 if he was not in fact subject to § 1226's procedural framework." *LNU*, 2026 WL 395290, at *2.

Yu also remained at liberty until his detention in 2025. During that time DHS made no attempts to detain him and he apparently remained subject to the terms of the OREC. Thus, even assuming he had been released on parole and that such parole expired by its own terms, such expiration "does not somehow obviate the need for the Government to provide an individualized

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS (DKT. NO. 1) - 12

hearing prior to re-detaining the parolee." *See Espinoza Palacios v. Hermosillo*, Case No. 2:26-cv-491-JNW, 2026 WL 686138, at *9 (W.D. Wash. March 11, 2026) (internal citations omitted).

Yu has identified an established liberty interest.

   b.   *Anibal Garcia Ramirez and Marvin Hitler Zamora*

Respondents assert Petitioners Garcia Ramirez and Hitler Zamora were "subject to conditions of release, with the expectation that violations of those conditions would result in re-detention." (Dkt. No. 9 at 10.)

First, as with Yu, both these Petitioners previously were released on ORECs that were subsequently revoked when they were re-detained. (Dkt. Nos. 11 at 2; 12 at 2.)  Second, Respondents do not cite, nor is the Court aware of, any case law holding alleged violations of terms of conditions of release decrease one's interest in remaining free from imprisonment. *See Nava v. Wamsley*, Case No. 2:26-cv-0459-DGE, 2026 WL 593097, at *3 (W.D. Wash. Mar. 3, 2026).  Third, absent from the record is any evidence these Petitioners missed a scheduled immigration court hearing.  Fourth, Garcia Ramirez was at liberty for more than eight years, while Hitler Zamora was at liberty for more than a year and a half.  During their time in the United States, both Petitioners applied for asylum, pursued education and employment and developed relationships.

Accordingly, these Petitioners' liberty interests have increased, rather than been diminished, over time.

   c.   *Alfredo Arroyo Gomez*

Respondents argue Petitioner Arroyo Gomez has a diminished interest in his liberty because he "had no status in the United States and was not in any immigration proceedings at all." (Dkt. No. 9 at 10.)  Arroyo Gomez contends the dismissal of his removal proceedings does

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS (DKT. NO. 1) - 13

not diminish his interest in his continued liberty.  (Dkt. No. 15 at 6.)  The Court agrees.  As a general proposition, individuals "who have been released from custody, even where such release is conditional, have a liberty interest in their continued liberty." *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025).  The Court finds no authority for the proposition that the dismissal of Arroyo Gomez's removal proceedings diminishes his liberty interest.  Moreover, Arroyo Gomez has been at liberty for more than 10 years, during which time he established himself in his community and his church, cared for his child, and maintained employment.  Arroyo Gomez's reliance on his freedom has created a constitutionally protected liberty interest "that cannot be extinguished without due process." *A.B.J.C. v. Hermosillo*, Case No. 2:26-CV-00185-JNW, 2026 WL 497097, at *3 (W.D. Wash. Feb. 23, 2026) (holding that regardless of whether a habeas petitioner was still subject to an OREC, the petitioner had a constitutionally protected liberty interest where the government "released [him] in 2020, affirmatively moved to dismiss his removal proceedings in 2022, and acquiesced in his continued liberty for six years.").

Accordingly, the first *Mathews* factor favors all four Petitioners.

2.  <u>Risk of erroneous deprivation of liberty interest through procedures used</u>

a.  *Jianzhuang Yu and Arroyo Gomez*

Respondents argue the risk of erroneous deprivation of Yu's liberty interest is minimal because he "has fulfilled the purposes of his parole and is beyond the expiration of parole." (Dkt. No. 9 at 11.)  Petitioners Yu and Arroyo Gomez contend their re-detentions were arbitrary because they have not violated any conditions of release or committed any crimes while in the community.  (Dkt. No. 15 at 8.)  Yu and Arroyo Gomez argue that despite supposedly being detained during a "targeted" operation, Respondents do not contend that either petitioner "was a pre-planned target nor that either was arrested based on evidence demonstrating a risk of flight or

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS (DKT. NO. 1) - 14

danger to the community." (*Id.*)  Yu argues he was fully compliant with the conditions of his OREC when he was re-detained, and Arroyo Gomez argues he was mistaken for another individual.  (*Id.*)

The risk of erroneous deprivation with respect to both these Petitioners' re-detention is high.  Respondents have presented no evidence that either Yu or Arroyo Gomez is a flight risk or a danger to the community.  Yu had been released subject to the October 2021 OREC.  At any time since then, an immigration judge could have concluded he was a flight risk and ordered his detention, but they did not.  With respect to Arroyo Gomez, the risk of erroneous deprivation is especially high, given that Respondents acknowledge they detained the wrong individual and considering that his removal proceedings had been terminated without any conditions placed on his continued liberty.

> b.   *Anibal Garcia Ramirez and Marvin Hitler Zamora*

Respondents argue Petitioners Garcia Ramirez and Hitler Zamora violated their conditions of release.  (Dkt. No. 9 at 11.)  However, "if ICE has apprehended a noncitizen and placed [him] in removal proceedings without detaining [him], it has necessarily already determined that the noncitizen is neither a flight risk nor a threat to the public."  *Pablo Sequen v. Albarran*, Case No. 25-cv-06487-PCP, 2025 WL 3724878, at *13 (N.D. Cal. Dec. 24, 2025) (citing *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017), *aff'd sub nom. Saravia for A.H. v. Sessions*, 905 F.3d 1137 (9th Cir. 2018)).  Other courts have rejected the argument that ICE can re-detain those released for "purely technical violations, like being late to a check-in," without regard as to whether that technical violation means the person is a flight risk or danger.  *Vilela v. Robbins*, Case No. 1:25-cv-01393-KES-HBK (HC), 2025 WL 3101334, at *4 (E.D. Cal. Nov. 6, 2025) (citation and alterations omitted) (collecting cases).

Respondents do not argue that either Garcia Ramirez and Hitler Zamora are flight risks or a danger to the community.

Accordingly, the Court finds the second *Mathews* factor also favors Petitioners.

### 3.   Government's Interest

The third *Mathews* factor contemplates "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."  424 U.S. at 335.  Respondents do not address the third *Mathews* factor in any depth.

Admittedly, Respondents have an interest in ensuring a noncitizen appears at future immigration proceedings and that a noncitizen does not pose a danger to the community. *Zadvydas*, 533 U.S. at 690.  And although requiring a pre-detention process in this case would present some administrative burden, given the high risk of erroneous deprivation and the fundamental liberty interest at stake, providing effectively no pre-detention process—as Respondents did here—is constitutionally deficient.  And although "there may be situations that urgently require arrest, in which a prompt post-deprivation hearing is appropriate," *Guillermo M.R. v. Kaiser*, 791 F. Supp. 3d 1021, 1036 (N.D. Cal. 2025) (citing *Zinermon v. Burch*, 494 U.S. 113, 128 (1990)), Respondents offer no basis to conclude that any of the Petitioners' circumstances presented such an urgent scenario.  Furthermore, the Court acknowledges that the Government has a strong interest in returning noncitizens to custody who violate conditions of release, but there is no indication that providing Petitioners with notice and an opportunity to be heard prior to re-detaining them would have impaired this interest.  *O.F.B. v. Maldonado*, Case No. 25-CV-6336 (HG), 2025 WL 3277677, at *7 (E.D.N.Y. Nov. 25, 2025) ("[T]he government's interest in efficient administration of the immigration laws at the border is not

impermissibly burdened by affording the process laid out in 8 C.F.R. § 212.5 because it is required to follow its own regulations." (citation modified)).

In sum, all three *Mathews* factors favor Petitioners. Petitioners' re-detention and continued detention violates the due process protections afforded to them by the Constitution. Petitioners have proven by a preponderance of the evidence that they are "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c).

**C. Arroyo Gomez: Release v. Bond Hearing**

Respondents identify that in *Garcia Gabriel v. Hermosillo*, Case No. 2:25-cv-02594-DGE-GJL, 2026 WL 194233, at *6 (W.D. Wash. Jan. 26, 2026), this Court ordered a bond hearing for a petitioner whose prior removal proceedings had been terminated rather than grant the petitioner immediate release. (Dkt. No. 9 at 11) ("in similar circumstances to Arroyo Garcia, this Court has ordered a bond hearing pursuant to 8 U.S.C. § 1226(a)"). In response, Petitioners identify that other Courts "have applied the *Mathews* analysis in cases of noncitizens with previously-dismissed proceedings—and [] those courts have recognized that 'a post deprivation hearing cannot serve as an adequate procedural safeguard." (Dkt. No. 15 at 6, n.5.)

In *Lima Gamez, et al v. Hernandez et al*, Case No. 2:26-cv-01104-BAT, 2026 WL 1382362, at *5 (W.D. Wash. May 18, 2026), Magistrate Judge Brian Tsuchida declined to follow this Court's ruling in *Garcia Gabriel*, identifying:

> The Court finds little sense in the proposition that, merely because the government dismissed removal proceedings against Petitioner and released him with no restrictions, he is less entitled to procedural protections than would be a petitioner who remains in active removal proceedings and is subject to conditional release. As Petitioner correctly points out, 'Respondents' theory would permit DHS to erase any noncitizen's liberty interest and due process protections by moving to dismiss their prior proceedings, *see* 8 C.F.R. § 239.2(a), (c), and filing a new Notice to Appear.'

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS (DKT. NO. 1) - 17

The Court agrees with Judge Tsuchida's criticism of its prior ruling in *Garcia Gabriel*. A noncitizen's due process protections after dismissal of prior removal proceedings cannot be less than the due process protections afforded to noncitizens subject to conditional release.[9]

Accordingly, the Court concludes, based on *Mathews*, ordering Arroyo Gomez's release rather than ordering a bond hearing is the appropriate relief.

### D.  Request for Permanent Injunctive Relief

Petitioners seek a permanent injunction barring them from being re-detained without notice and a hearing.  (Dkt. No. 1 at 25–27.)  Petitioners argue that if they are released, they will remain subject to similar conditions and are likely to face arbitrary re-detention again.  (*Id.*)  A permanent injunction requires a "cognizable danger of recurrent violation," not just a past violation.  *Cummings v. Connell*, 316 F.3d 886, 897 (9th Cir. 2003).  The Court is sympathetic to Petitioners' argument given that they were re-detained without constitutionally adequate process.  Nevertheless, the record does not establish a specific, real, and immediate threat that these same Petitioners will again be re-detained without process after they are released under this order.  Moreover, the Court's order will prohibit Respondents from re-detaining Petitioners without complying with applicable procedural requirements.

---

[9] The parties in *Garcia Gabriel* did not raise the issue of differential treatment between noncitizens subject to conditional release and those whose removal proceedings had been previously terminated.  Nor did this Court identify on its own the flaw Judge Tsuchida succinctly identified in *Lima Gamez*.

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS (DKT. NO. 1) - 18

## IV.    ORDER

Petitioners' petition for writ of habeas corpus (Dkt. No. 1) is GRANTED.  Respondents and all their officers, agents, attorneys, and persons acting on their behalf or in concert with them SHALL:

- Release Petitioners Jianzhuang Yu, Anibal Garcia Ramirez, Marvin Hitler Zamora, and Alfredo Arroyo Gomez from custody within **ONE** day of this order and return them to the conditions of release identified in their previously issued Orders of Release on Recognizance.

- Petitioners SHALL not be re-detained (1) without being provided adequate notice of Respondents' intent to re-detain them and the grounds for re-detention and (2) without a pre-deprivation hearing in front of a neutral decisionmaker.  This prohibition does not apply to mandatory detention under 8 U.S.C. § 1226(c) or detention under 8 U.S.C. § 1231 should a final order of removal be issued.

- Within TWENTY-FOUR (24) hours of this order, Respondents SHALL provide the Court with a declaration confirming Petitioners have been released from custody.

- Petitioners requested attorney fees and costs under the EAJA.  *See* 28 U.S.C. § 2412(d)(1)(A).  To be eligible for fees under the EAJA, a petitioner must submit an application within thirty days of final judgment.  *See id*. § 2412(d)(1)(B).  A final judgment is one that is final and not appealable.  *Id*. § 2412(d)(2)(G).  Accordingly, Petitioner may file a motion supporting such request no later than **August 20, 2026**, which assumes Respondents do not appeal this order.

Lastly, the Court notes that it does not automatically maintain jurisdiction for any and all re-detentions that could potentially occur in the future.  The individual circumstances of a particular re-detention will determine whether jurisdiction should remain with this Court.

Dated this 22nd day of May, 2026.

David G. Estudillo
United States District Judge

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS (DKT. NO. 1) - 20